# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No.
**Information associated with the URL** ) 2☐-926M(NJ)
https://www.instagram.com/fromgamblingtogrinding/ )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**See Attachment A**

located in the _____Eastern_____ District of _____Wisconsin_____, there is now concealed *(identify the person or describe the property to be seized)*:

**See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

  x☐ evidence of a crime;

  ☐ contraband, fruits of crime, or other items illegally possessed;

  ☐ property designed for use, intended for use, or used in committing a crime;

  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 (a)(1) | See Attached Affidavit |
| 21 U.S.C. 843(b) | |

The application is based on these facts:
**See Attached Affidavit**

  ☐ Continued on the attached sheet.

  ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*SA Scott Marlow*
*Applicant's signature*

**DEA SA Scott Marlow**
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____**telephone**_____ *(specify reliable electronic means)*.

*Nancy Joseph*
*Judge's signature*

Date: 4/7/2☐2☐

City and state: Milwaukee, Wisconsin

**Honorable Nancy Joseph**
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR A SEARCH WARRANT

I, Scott Marlow, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with the URL https://www.instagram.com/fromgamblingtogrinding/ (the "**SUBJECT ACCOUNT**") that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC, ("Instagram") a social-networking company owned by Facebook, Inc. and headquartered in San Francisco, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Instagram to disclose to the government records and other information in its possession, including the contents of communications, pertaining to the subscriber or customer associated with the **SUBJECT ACCOUNT**.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been so employed since March 2006. Prior to my current assignment, I was employed as a police officer with the City of West Allis, a suburb of Milwaukee, Wisconsin for approximately nine (9) years. I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3. As a federal law enforcement officer, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and

the seizure of illegal drugs, weapons, stolen property, millions of dollars in United States currency and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the affiant on many search warrants. I have also spoken on numerous occasions with other experienced narcotics investigators, both foreign and domestic, concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses which specialized in the investigation of narcotics trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

4. The facts in this affidavit come from my personal observations, my training and experience and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2

Case 2:20-mj-00926-NJ   Filed 04/07/20   Page 3 of 16   Document 1

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (possession with the intent to distribute and distribute controlled substances), 846 (conspiracy to possess with the intent to distribute and distribute controlled substances), and 843(b) (use of communications facilities to facilitate controlled substance felonies), have been committed, are being committed, and will be committed by Tykel Spears. There is also probable cause to believe that the **SUBJECT ACCOUNT** will constitute evidence of those criminal violations and may lead to the identification of other individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

6. On August 19, 2019, the Milwaukee Police Department investigated a double shooting that occurred in the area of North 53rd Street and West Meinecke Street, in the City of Milwaukee, County of Milwaukee, State of Wisconsin. During that investigation, Milwaukee Police Officers located a motor vehicle in front of 2442 North 54th Street, that was struck by gunfire. Pursuant to that investigation Investigators went to 2429 North 53rd Street, and spoke with a witness of the incident, who stated they heard 2 gunshots prior to the incident and heard a male shout "get the fuck out". The witness stated they looked out the window of her residence and saw a black male armed with a gun run into 2442 North 53rd Street.

7. Investigators went to 2442 North 53rd Street, and interviewed an occupant of the residence and spoke with Tammy Spears, who stated she lives at the residence with her (2) sons and daughter. One of the sons was identified as Tykel D. Spears. Tammy

3

Spears informed investigators that Tykel Spears was not home at the time and did give investigators permission to search the residence, and ultimately signed a Milwaukee Police Department consent to search document.

8. During a search of the basement investigators located an unknown white substance wrapped in plastic under a couch cushion and an unknown white substance wrapped in plastic inside a black backpack. Investigators also located a black digital scale, red digital scale, plastic baggies, glass plate with a unknown white powdery substance, and a hydraulic press. The items that were recovered are indicative of drug dealing. The items were recovered and carried to District no. 3 where they were placed on Milwaukee Police inventory. The unknown white substances was later field tested positive for the presence of fentanyl, with a total weight of 74.09 grams. The combined weight of the fentanyl is indicative of drug dealing.

9. Investigators conducted an on scene interview of Tammy Spears who denied knowledge of the fentanyl and identified Tykle Spears as using the basement to play video games. While on-scene, Tykel Spears arrived at home and was subsequently taken into custody.

10. On August 20, 2019, Investigators conducted a mirandized interview of Tykel Spears. During the interview Tykel Spears confessed to possessing the fentanyl recovered from the basement and confessed to selling drugs. Tykel Spears stated he made

$175,000.00 in one year selling drugs. The case was presented to the Milwaukee County District Attorney's Office for charges and pended for a later date.

11. That within the past month, Affiant interviewed a confidential source (CS #1) who stated he/she had information about Tykel Spears, who CS # 1 identified as a large scale heroin and fentanyl dealer. CS #1 provide affiant with two cellular phones that Spears utilizes to conduct narcotics transactions. CS #1 stated he/she has purchased heroin from Tykel Spears hundreds of times and has observed Tykel Spears in possession of large quantities of heroin on multiple occasions in the past. This information was corroborated via law enforcement sources.

12. For several reasons, Affiant believe that CS #1 is reliable and credible. First, CS #1 has been provided information that Affiant was able to corroborate through law enforcement sources. Second, the information CS #1 has provided information against CS #1's penal interest. Third, the information provided by CS #1 is consistent with evidence obtained elsewhere in this investigation where CS #1 was not utilized, and substantial portions of CS #1's information has been corroborated through independent investigation, including information from other sources. Fourth, CS#1's information is based on firsthand observations. CS #1 has a prior conviction for Felon Possess Firearm, Criminal Damage to Property, and Receiving Stolen. CS#1 is providing information to law enforcement for financial compensation.

13. Investigators learned that Tykel Spears utilizes the Instagram account of **https://www.instagram.com/fromgamblingtogrinding/**.

5

14. That within the past week, investigators interviewed a confidential source (CS #2) who stated he/she had information about Tykel Spears, who CS # 2 identified as a large scale heroin and fentanyl dealer. CS #2 has observed Tykel Spears in possession of large quantities of heroin on multiple occasions in the past. For several reasons, Affiant believe that CS #2 is reliable and credible. First, CS #2 has been provided information that Affiant was able to corroborate through law enforcement sources. Second, the information CS #2 has provided information against CS #2's penal interest. Third, the information provided by CS #2 is consistent with evidence obtained elsewhere in this investigation where CS #2 was not utilized, and substantial portions of CS #2's information has been corroborated through independent investigation, including information from other sources. Fourth, CS#2's information is based on firsthand observations. CS #2 has a prior convictions for Possession of Cocaine with Intent to Distribute. The CS was arrested in 2019 for Possession with Intent to Distribute Heroin and Bail Jumping. CS#2 is providing information to law enforcement for judicial consideration.

15. CS #2 stated that he/she received an Instagram video from Spears, who utilized **SUBJECT ACCOUNT** to post the video. SPEARS was holding a large amount of USC (approximately $100,000.00), displaying jewelry with a firearm in the background. CS #2 provided investigators with a copy of the Instagram video, confirming CS #2's statement. Investigators viewed the video and observed SPEARS holding a large amount of USC, wearing numerous pieces of luxury jewelry with a silver and black semi-automatic firearm in the background.

16. From my review of publicly available information provided by Instagram about its service, including Instagram's "Privacy Policy," I am aware of the following about Instagram and about the information collected and retained by Instagram.

17. Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com. Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

18. Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user may add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos.

19. Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram. Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may

7

include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

20. Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

21. Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block the, which prevents the blocked user from following that user.

22. Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

23. Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

24. Users on Instagram may also search Instagram for other users or particular types of photos or other content.

25. For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or

8

through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP) address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

26. Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram. For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

27. Instagram also collects information on the particular devices used to access Instagram. In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

28. Instagram also collects other data associated with user content. For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

29. Instagram also may communicate with the user, by email or otherwise. Instagram collects and maintains copies of communications between Instagram and the user.

30. As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, an

9

Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the account was accessed or used. For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

10

31. Based on the information above, the computers of Instagram are likely to contain all the material described above with respect to the **SUBJECT ACCOUNT**, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## CONCLUSION

32. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations Title 21, United States Code, Sections 841(a)(1) (possession with the intent to distribute and distribute controlled substances), 846 (conspiracy to possess with the intent to distribute and distribute controlled substances), and 843(b) (use of communications facilities to facilitate controlled substance felonies) may be located in the **SUBJECT ACCOUNT** described in Attachment A.

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the Instagram profile with URL:

https://www.instagram.com/fromgamblingtogrinding/

that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a company that is owned by Facebook, Inc. and headquartered in Menlo Park, California.

12

# ATTACHMENT B

## ITEMS TO BE SEIZED

All records described in Attachment A that relate to violations of drug distribution, in violation of 21 U.S.C. § 841(a)(1), and money laundering, in violation of 18 U.S.C. § 1957, and involve Tykel Spears including, but not limited to:

a. Drug customers and related identifying information;

b. types, amounts, and prices of drugs trafficked as well as dates and amounts of specific transactions;

c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

d. photographs and/or videos showing Carter in possession of firearms and/or narcotics; and

e. photographs and/or videos showing Spears in possession of U.S. Currency, luxury goods, jewelry, and vehicles.

13

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the Instagram profile with URL:

https://www.instagram.com/fromgamblingtogrinding/

that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a company that is owned by Facebook, Inc. and headquartered in Menlo Park, California.

## ATTACHMENT B

## ITEMS TO BE SEIZED

All records described in Attachment A that relate to violations of drug distribution, in violation of 21 U.S.C. § 841(a)(1), and money laundering, in violation of 18 U.S.C. § 1957, and involve Tykel Spears including, but not limited to:

a. Drug customers and related identifying information;

b. types, amounts, and prices of drugs trafficked as well as dates and amounts of specific transactions;

c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

d. photographs and/or videos showing Carter in possession of firearms and/or narcotics; and

e. photographs and/or videos showing Spears in possession of U.S. Currency, luxury goods, jewelry, and vehicles.